[Civ. No. 970.   Fifth Dist.   Sept. 24, 1968.]

GLENN E. CAMPER, Plaintiff, Cross-defendant and Appellant, v. W. J. McDERMOTT, Defendant, Cross-complainant and Respondent.

Forslund & Wilson and Douglas E. Wilson for Plaintiff, Cross-defendant and Appellant.

Freeman, Rishwain & Ferguson and Maxwell M. Freeman for Defendant, Cross-complainant and Respondent.

CONLEY, P. J.—Glenn E. Camper, individually and doing business as Elton Pools, sued the defendant for a portion of the contractual pay for the construction of a swimming pool on property in Stockton near the University of the Pacific,

where the defendant was carrying on an apartment house business consisting of 50 units; the plaintiff filed on a claim of lien which he sought to foreclose. Inconsequential insofar as this appeal is concerned, the record shows that title to the real property was owned by Standard Oil Company of California and that Mr. McDermott occupied it under a contract of purchase; all parties stipulated that Standard Oil Company could not be held on the claim set forth in the complaint and this angle of the litigation is, therefore, completely eliminated.

The testimony showed that Mr. McDermott contracted with Mr. Camper for the construction by the latter of an adequate swimming pool, Mr. McDermott stating that he intended to install it for competition with other apartment houses in the vicinity. The contract showed a total price of $9,013.46 for the construction of the pool, payment to be made as follows: 10 percent on acceptance, 60 percent on placing the rough structure, 5 percent on installation of a filter, 20 percent on placement of tile and coping and 5 percent on completion. The first payment of 10 percent or $901.35 was made initially by the defendant to plaintiff, and Mr. Camper alleged that he billed the McDermotts after the completion of the rough structure on September 14, 1963, but that Mr. McDermott failed to perform his part of the contract by then paying 60 percent of the contract price.

In his answer, Mr. McDermott alleged that plaintiff did not perform required portions of the contract in that he did not construct the pool free from defect, did not provide required steps in the pool, did not complete the pool within a reasonable time or in accordance with plans filed with the San Joaquin County building inspector's office, and did not file plans with the San Joaquin County health officer. In the answer, Mr. McDermott also alleged that plaintiff's performance was illegal, because it failed to comply with section 24101.1 of the Health and Safety Code, requiring the filing of preliminary plans and that the contract was illegal, because it did not provide for a chlorinator as required by the Administrative Code, and that Mr. Camper had been guilty of fraudulent statements in that he had told Mr. McDermott that he had had experience in completing 300 swimming pools and that such statement was false.

In addition to the answer a cross-complaint was filed, alleging that, as a direct result of the alleged breaches of contract on the part of the plaintiff and cross-defendant, the apart-

ments on the land owned by the McDermotts had vacancies after September 1, 1963, and that cross-complainant had received $10 per month less rent per unit because of the lack of a swimming pool for some 13 months. The prayer of the defendant and cross-complainant was that plaintiff take nothing by the complaint and that he should receive damages on his cross-complaint. After an extensive trial, the court filed findings and conclusions of law and a judgment that plaintiff take nothing by reason of the complaint, and that cross-complainant should have judgment against the cross-defendant for $6,000 damages and for costs.

But little space in this opinion need be given to the judgment against the plaintiff on the complaint. The findings in this respect are complete and are supported by substantial evidence. Paragraph V of the findings contains the following:

"That the plaintiff wilfully failed to perform according to the terms of said contract and the plaintiff has wilfully failed at all times to perform the stipulations, conditions and agreements stated in said contract to be performed by plaintiff. That each of plaintiff's wilful failure to perform stipulations, conditions and agreements of said contract are material and substantial. That the workmanship and material used in the construction of the gunite pool shell, which is a substantial part of the pool, is defective. That the contract required plaintiff to provide steps as a method of ingress and egress to and from the pool. Said agreement was not modified with regard to steps. That plaintiff failed to provide said steps. That plaintiff agreed to build said pool within a reasonable period of time by implication. That plaintiff expressly agreed to complete said pool on or before the last day of August, 1963. That plaintiff failed to complete said pool either within a reasonable period of time or prior to the last day of August, 1963, without lawful excuse. That in further breach of said contract plaintiff agreed to but failed to file plans for said pool prior to construction or at any reasonable time with the Health Officer of the County of San Joaquin, County Local Health District in violation of Title 17, Section 7780, California Administrative Code and Section 24101.1 of the California Health and Safety Code. That plaintiff agreed to but failed to construct the swimming pool shell of water tight construction with smooth and impervious surfaces in violation of Title 17, Section 7784, California Administrative Code."

The same essential dealing with the facts is contained in Paragraph IV of the findings concerning the cross-complaint.

The conclusions of law contain the following:

## I

''That there was a contract between the parties.

## II

''That the plaintiff breached the contract without any legal excuse by failing to perform the conditions and promises required to be performed by him in said contract, which failure of performance was both willful and substantial.

## III

''That defendant did not receive the consideration promised to defendant by plaintiff under said contract resulting in a failure of consideration.''

The evidence amply supports the foregoing conclusions of the court; there can be no question but that the record supports the findings of the court and the conclusions of law concerning the claim advanced by Mr. Camper in his complaint. A detailed analysis of the evidence would be redundant and is unnecessary.

However, when we consider the issues as to damages awarded on the cross-complaint a different conclusion is required. ▮ We do not take the position that no damages with respect to loss of rental by reason of the failure of the plaintiff and cross-defendant to comply with the requirements of the contract would be proper; our conclusion on that branch of the case is only that the evidence in the record does not justify the award of $6,000 or any other amount of specific substantial damages as lost profits. It cannot be questioned that, particularly in a university neighborhood where young renters predominate, the presence of a swimming pool is an asset to an apartment house. Whether or not evidence may be adduced on a retrial which would justify an award of substantial damages is another question and depends on factors which we are in no position to pass upon in view of the present condition of the record.

The proof adduced by the cross-complainant consists in showing what he terms as the ''Lost Rent Vacancy'' for the years 1963, 1964, 1965 and 1966, together with the expression of some opinions by Mr. McDermott as owner of the apartment house involved with respect to the utility for rental purposes of a swimming pool. He testified that he made inquiries at other apartments in the vicinity and formed the opinion that a swimming pool was an aid toward rental. He also testified that the average rental vacancy in his apart-

ments prior to the final installation of the pool was $615 per month and that after the completion of the pool it was reduced to $115 per month. The difference of $500 per month is what the cross-complainant has tendered as the loss by reason of the failure of the cross-defendant to complete the installation of the pool by the end of August 1963. Thirteen months passed between the time when Camper promised completion and the date when the pool was finished by his successor. Exhibit 55 shows the ''Lost Rent Vacancy'' from the beginning of 1963 to the end of 1966. This evidence, in our opinion, is not sufficient to justify the finding of $6,000, or any substantial amount as damages. The exhibit in question is quite interesting in view of the claim which is made by cross-complainant. It is true that the lost rental due to vacancy is reduced in monthly amount as shown by the exhibit after the installation of the pool, but it does not follow that such reduction is proximately due solely to the installation of the swimming pool or that the fluctuations which later show in the exhibit were or were not due to the presence of a pool. The so-called ''Lost Rent Vacancy'' is relatively high in the year 1963, but in 1964, long before the completion of the pool, it was greatly reduced from $1,052.50 in May of 1964 to $92.50 in June of 1964. That comparatively low ''Lost Rent Vacancy'' continued in the months of November and December 1964, after the completion of the swimming pool, but in 1965, in January, it rose to $365, although the pool had long since been completed, and was $462.50 in May, $300 in June, and $190 in July of that year. It fell to $92.50 in August, and there was no rental vacancy then for a number of months until April and May of 1966 when it rose to $230.

H. Rich Bramwell, a Stockton real estate appraiser and broker who had been in business for 12 years, who taught urban economics at the University of the Pacific, and who was a member of the American Institute of Real Estate Appraisers and an owner of an apartment house containing 16 units, testified to what one also can take to be true from ordinary experience and knowledge as follows:

''Mr. Wilson: Q. In your experience and to your knowledge is there any relationship as far as occupancy or vacancies in apartment houses are concerned that have a swimming pool?

''A. Particularly a swimming pool?

''Q. Yes.

''A. A swimming pool only? Oh, I'd have to say, sir, that

in my opinion I know of no way to isolate a single factor such as a swimming pool to either occupancy or vacancy.

"Q. Now, what other factors are involved?

"A. Well, there are any number: Location, the bus lines, the commercial developments, shopping facilities, churches, the design of the building, what is included, are the rents right, the attitude of the manager, how much free rent they give, the components of the apartment, what kind of air conditioning, is there air conditioning, what is the quality and condition of the carpeting, the drapes—anything within the apartment puts it in a competitive position with other things, and I just know of no way to isolate it, a single factor. I mean, it would be like asking me if the stove of the apartment is of inferior quality what effect does that have on occupancy. I can't isolate that, sir. I know of no way to do that."

In common sense it cannot be said on the basis of the evidence in this case that failure to rent the whole number of 50 units of an apartment house can be attributed entirely to the absence of a swimming pool, and the evidence of Mr. McDermott that he thought one could do so is not worthy of being accepted as the mathematical basis for specific substantial damages. There are many reasons why apartments cannot be rented, depending on the elements mentioned by the witness Bramwell and other considerations which occur in common experience. In the absence of the elimination of other reasons or of proof of the existence of semi-scientifically handled experience, the loss of rental in a specific amount cannot be attributed to damage flowing from a failure to abide by a contract that a swimming pool would be installed within a reasonable time or, as stated by the cross-complainant, by the end of the month of August 1963.

Accordingly, the judgment is affirmed on the issues made by the complaint and answer denying recovery to the plaintiff, and the judgment is reversed as to the damages awarded cross-complainant in the amount of $6,000, with directions to retry the issues made by the cross-complaint and the answer thereto, if cross-complainant be so advised.

Stone, J., concurred.